**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **MICHAEL P. M.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 25-1253-JWL** |
| **FRANK BISIGNANO,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Social Security Disability Insurance (SSDI) benefits and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, and 1614(a)(3)(A) of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ's) assessment of Plaintiff's allegations of disabling symptoms from his ulcerative colitis, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I. Background

Plaintiff protectively filed applications for SSDI and SSI benefits on March 31, 2023. (R. 17, 190-93). After exhausting administrative remedies before the Social

Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims "the ALJ's evaluation of [Plaintiff's] statements was not supported by substantial evidence because he relied on conclusory statements and an even-handed summary of the record that did not identify actual inconsistencies in the record." (Pl. Br. 8) (citing Stephanie Jean S. v. Kijakazi, No. CV 20-1349-JWL, 2022 WL 204244, at *5 (D. Kan. Jan. 24, 2022)).

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at step four and five of the sequential process. Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999). The court addresses the error alleged in Plaintiff's Social Security Brief.

## II. Discussion

Plaintiff claims two bases of error in the ALJ's evaluation of Plaintiff's allegations of disabling symptoms resulting from ulcerative colitis. First, he argues the ALJ did not identify record evidence that is inconsistent with his allegations of disabling ulcerative colitis symptoms. (Pl. Br. 11-12). Second, he argues, "the ALJ explicitly recognized [Plaintiff's] need to 'use the restroom,' but didn't explain how access to a restroom was sufficient to account for this symptom." Id., 12. The Commissioner argues the ALJ evaluated Plaintiff's allegations of symptoms in accordance with agency policy and the regulations. (Comm'r Br. 2-3).

### A. Standard for Evaluating a Claimant's Allegations of Symptoms

The court's review of an ALJ's evaluation of a claimant's allegations of symptoms is deferential. Such determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations[1] are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.

The framework for a proper analysis of a claimant's allegation of symptoms is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). An ALJ must consider (1) whether the claimant has established a symptom-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's symptoms are in fact disabling. See, Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (explaining the Luna

[1] Luna, Thompson, and Kepler, were decided when the term used to describe the evaluation of a claimant's allegations of symptoms resulting from her impairments was "credibility determination." Although that term is no longer used by the Social Security Administration, the applicable regulation never used that term and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified at 20 C.F.R. § 404.1529). Moreover, the Tenth Circuit held its approach to credibility determination was consistent with the approach set forth in SSR 16-3p. Brownrigg v. Berryhill, 688 Fed. App'x. 542, 546 (10th Cir. 2017). Therefore, the three-step framework set out in Luna, based on 20 C.F.R. § 404.1529 (2017) is still the proper standard to be used as explained in the regulations in effect on November 8, 2024, when this case was decided. Nonetheless, to the extent, and only to the extent, that "subjective measures of credibility that are peculiarly within the judgment of the ALJ;" Kepler, 68 F.3d at 391; relate to an examination of a claimant's character, it is specifically prohibited by SSR 16-3p and is no longer a valid factor to be considered.

framework). The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating credibility: Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i-vii), 416.929(c)(3)(i-vii). The court has recognized a non-exhaustive list of factors which overlap and expand upon the factors promulgated by the Commissioner. Luna, 834 F.2d at 165-66. These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).

**B. The ALJ's Relevant Findings**

The ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 23). He then explained the inconsistencies he found. Id. 23-25. He summarized the medical records of Plaintiff's ulcerative colitis, proctosigmoiditis, irritable bowel disorder, and gastroesophageal reflux disease and explained,

> The initial mild objective signs and lack of evidence showing progression as well as indications that his condition is stable with infusions every other month are not consistent with the alleged severity of symptoms. However, his need to use the restroom supports a need for reasonable access to a restroom as described in the residual functional capacity assessment described above.

(R. 23).

The ALJ also found Plaintiff's allegations of symptoms are not consistent with his clinical presentation for several reasons. He noted Plaintiff's anemia stabilized in March 2024, and he stopped taking iron supplements. He noted Plaintiff's provider gave him a prescription for a cane in August 2024 "due to gait instability and chronic headaches," but "the September office visit did not indicate the use of a cane and indicated no motor, sensation, or movement deficits" and "[a]t the consultative examination, he exhibited normal function, strength, motor movement, and gait." Id. 24.

He noted that Plaintiff "alleges that his conditions cause brain fog, depression, and anxiety" and he "has been placed on anxiety medications." Id. But

> During his therapy session, he is repeatedly noted to [be] engaged, improving, and presenting with normal mental status, including his thought process and focus. His ability to engage, learn, and improve with focused treatment is not consistent with the claimant's allegations that brain fog and anxiety prevent him from performing routine basic tasks.

Id. (citations omitted).

The ALJ discussed activities Plaintiff engages in:

> He does light exertional household tasks that are routine in nature. He shops in stores and online, cares for a dog, cleans, does the laundry, and mows. He reported to his provider working for 5 hours outside as recently as April 2024. At hearing, he testified that he continues to take on sporadic freelance and graphic design work. This work indicates he remains capable of performing detailed and complex tasks. His activities show a range of

> mental and physical tasks that are not consistent with the allegations of inability to complete basic or routine tasks.

(R. 24) (citation omitted).

Finally, the ALJ noted that Plaintiff's therapist, Ms. Roberson, stopped providing therapy in February 2024, Plaintiff did not restart therapy with another provider, he did not require hospitalization, and the record indicates no significant change in his mental health. Id. 25. The ALJ concluded, "His stability after ended therapy is not consistent with the indications of inability to adapt and manage himself." Id.

**C. Analysis**

Plaintiff's argument the ALJ did not identify record evidence that is inconsistent with his allegations of symptoms resulting from ulcerative colitis fails on several levels. First, it is not the ALJ's burden to prove Plaintiff's symptoms are not disabling, it is Plaintiff's burden to prove his symptoms are disabling. Second, in the last full paragraph of page 7 of his decision the ALJ cited considerable record evidence respecting Plaintiff's treatment for ulcerative colitis, proctosigmoiditis, irritable bowel disorder, and gastroesophageal reflux disease. (R. 23). At the end of that paragraph the ALJ concluded, based upon the record evidence cited, that the mild objective signs, the lack of evidence showing progression, and the indications that his condition is stable with infusions every other month are not consistent with the alleged severity of Plaintiff's symptoms. Id. Thus, the ALJ has explicitly identified record evidence that is inconsistent with Plaintiffs allegations of disabling ulcerative colitis symptoms.

Finally, and perhaps most importantly, an ALJ is not required to point to inconsistencies between the record evidence and the claimant's allegations of symptoms resulting from each and every impairment. Rather, where a claimant has proven an impairment with a loose nexus to his allegations of symptoms, the ALJ must consider all the record evidence (objective and subjective) and determine whether the symptoms are in fact disabling. The reason for this is that in many instances the symptoms, the severity of the symptoms, or the frequency of the symptoms are subjective and cannot be known by observation but must be adduced by consideration of the consistency of the claimant's allegations with the entirety of the record evidence. If the ALJ cites the inconsistencies relied upon and those inconsistencies are supported by the record evidence, the court must accept his evaluation of the claimant's allegations. Here, the ALJ relied upon inconsistencies between Plaintiff's allegations and the medical records of Plaintiff's ulcerative colitis, proctosigmoiditis, irritable bowel disorder, and gastroesophageal reflux disease; Plaintiff's clinical presentation; records respecting brain fog, depression, and anxiety; and records of the activities in which Plaintiff engages. The ALJ cited the record evidence upon which he relied, and Plaintiff has not pointed to record evidence which compels a contrary finding. Plaintiff has shown no error in the ALJ's consideration of Plaintiff's allegation of symptoms.

Plaintiff's second allegation of error, that the ALJ did not explain how access to a restroom was sufficient to account for Plaintiff's need to use a restroom, does not fare any better. As this court has found, the ALJ properly discounted Plaintiff's allegations of disabling ulcerative colitis symptoms (the need to use the restroom up to 15 to 20 times a

day, etc.). Thus, the ALJ need not explain how frequently Plaintiff needs to use a restroom. However, he did explain that Plaintiff's "need to use the restroom supports a need for reasonable access to a restroom as described in the residual functional capacity assessment described above." (R. 23). The RFC assessed explains further, "He must have reasonable access to a restroom, thus, cannot be required to work in an enclosed or confined space, such as an underground mine, open trench, grain bin or to[ll]-booth." (R. 22) (finding no. 5, bold omitted).

Plaintiff has shown no error in the Commissioner's final decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated September 2, 2026, at Kansas City, Kansas.

S/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**